UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, et al.,

       Plaintiffs,

   -against-

GRAIG GRANOVSKY, D.C., GRAIG
GRANOVSKY CHIROPRACTIC, P.C., VVX,
INC., and YEFIM KLIKSHTEYN,

      Defendants.

------------------------------------x

**MEMORANDUM & ORDER**

19-CV-6048(EK)(RER)

ERIC KOMITEE, United States District Judge:

   The Government Employees Insurance Company brought
this action together with certain related companies
(collectively, "GEICO").  GEICO alleges that it has been the
target of a prolific insurance-fraud scheme carried out by the
defendants.  The list of defendants includes VVX, Inc., a
medical device supplier; VVX's owner, Yefim Klikshteyn; and
certain medical clinics and doctors.  GEICO contends that the
defendants have submitted a very large (and growing) number of
bills for durable medical equipment that was medically
unnecessary or that the defendants did not actually provide at
all.  GEICO seeks a declaratory judgment establishing, among
other things, that it is not obligated to pay the claims
submitted by the defendants.  Compl. ¶ 154, ECF No. 1.  In

addition to seeking the declaratory judgment, the complaint asserts claims for common law fraud and unjust enrichment.[1]

GEICO moves now for injunctive relief pending the disposition of this action — specifically, an order (1) staying "all collection lawsuits pending in the state courts of New York between any of the Plaintiffs and Defendant VVX seeking No-Fault insurance benefits" and (2) enjoining VVX and anyone acting on its behalf from "commencing any lawsuit in the state courts of New York or arbitration before the American Arbitration Association against GEICO seeking No-Fault insurance benefits." Pl. Proposed Order Granting Inj. 1-2, ECF No. 58-13.[2]  For the following reasons, I deny the request to stay the state-court cases that are currently pending.  I grant, however, the request for an injunction against prospective collection actions by VVX or Klikshteyn against GEICO, whether in state court or arbitrations.

## I.    Background

### A.    Factual Background

GEICO has submitted substantial evidence in support of its claim of fraud.  Among other things, its outside counsel has

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as plaintiffs are citizens of Maryland, Compl. ¶ 7, all defendants are citizens of New York, *id*. ¶¶ 8, 11, 25, and the amount in controversy exceeds $75,000.  *Id*. ¶ 26.

[2] All page numbers to record citations refer to ECF pagination.

furnished a sworn declaration marshaling the evidence that has been adduced so far in discovery. *See* Decl. of Michael Vanunu ("Vanunu Decl.") ¶ 15-24, ECF No. 58-2. That affidavit also summarizes the landscape of state-court litigation that GEICO is asking to stay. *Id* ¶ 10. GEICO also relies on submissions from a medical expert, Dr. James Dillard, and certified orthotist, Bradley Smith, who identified various irregularities in the treatment of GEICO's insureds. *See* Decl. of James Dillard ("Dillard Decl."), ECF No. 58-4; Decl. of Bradley Smith ("Smith Decl."), ECF No. 58-5. GEICO supplements these opinions with affidavits from two doctors who were previously defendants here; both now deny having signed certain prescriptions submitted by VVX that purport to bear their signatures. Aff. of Dr. Yang Zhi Gang ("Gang Aff.") ¶¶ 9-12, ECF No. 58-6; Aff. of Dr. Haiyin Hua ("Hua Aff.") ¶¶ 9-12, ECF No. 58-7. In addition, GEICO has submitted a sworn declaration from a Claims Manager named Kathleen Asmus. She discusses the volume of claims GEICO has received from the defendants, GEICO's obligations to promptly pay or deny those claims under New York's No-Fault Insurance Law, and certain alleged difficulties associated with litigating GEICO's fraud defenses on a case-by-case basis in state court. Decl. of Kathleen Asmus ("Asmus Decl."), ECF No. 58-3. Finally, GEICO relies on the deposition testimony of defendant Klikshteyn, who admitted that he often chose what specific DME

to give to insureds based on his own assessment (despite not being a certified orthotist). *See* Dep. of Yefim Klikshteyn ("Klikshteyn Dep.") 91:23-92:9, ECF No. 58-9.  Except where otherwise noted, the findings of fact contained in this order are based on this evidence, which (as noted below) the defendants have not meaningfully contested.

GEICO alleges a wide-ranging scheme conducted by defendant VVX, a supplier of durable medical equipment, in concert with several "no-fault" medical clinics and certain doctors employed at those clinics.  Vanunu Decl. ¶ 4.  Broadly speaking, the modus operandi of the scheme allegedly was as follows:

The doctor- and clinic-defendants prescribed substantial quantities of DME to insured patients, regardless of medical necessity.  Dillard Decl. ¶¶ 7, 14-15.  Dr. Dillard avers that the clinics and doctors often prescribed the exact same DME to large swaths of patients.  *Id*. ¶ 7.  For example, Dr. Yang Zhi Gang of Shamrock Medical "virtually always" issued the same two prescriptions after his initial examination, regardless of the patient's specific injuries.  *Id*. ¶ 15.  The first prescription included a cervical collar, lumbosacral support, and a "general use cushion," and the second included an infrared lamp with stand, egg crate mattress, pressure board for a mattress, cold-water circulating unit, and whirlpool.  *Id*.

GEICO's evidence demonstrates that in many cases, the doctors' signatures on these prescriptions were forged. GEICO invokes the sworn declarations of Drs. Gang and Haiyin Hua, who were previously named as defendants but are now cooperating with GEICO. *See* Gang Aff. ¶¶ 9-12; Hua Aff. ¶¶ 9-12. They reviewed a sample of prescriptions purporting to bear their signatures that were submitted to VVX to fill. The signatures, they attest, were forged. Both doctors attest further that they made no medical determination that the items prescribed on those scripts were actually necessary. Gang Aff. ¶ 12; Hua Aff. ¶ 12.

On still other occasions, VVX submitted claims for reimbursement to GEICO that misrepresented the type of DME provided, a tactic commonly referred to as upcoding. Smith Decl. ¶¶ 7, 15. Specifically, VVX billed under codes applicable to custom-fitted orthotic devices — devices required to be bent, molded and trimmed by a professional orthotist to fit a particular patient — when in fact VVX supplied cheaper medical equipment and did no professional fitting. *See id*. ¶¶ 15, 19-23.

The clinics facilitated this upcoding by issuing prescriptions with generic language. *Id*. ¶ 7. One of GEICO's medical experts, Bradley Smith, reviewed bills and prescriptions from 398 different patient claim files. *Id*. ¶ 9. Smith concluded that the prescriptions in question "did not provide

sufficient detail to VVX to identify a medically necessary device." *Id.* ¶ 7.

GEICO says it has now received "thousands" of claims for reimbursement pursuant to this scheme. Vanunu Decl. ¶ 4. These claims total more than $980,000.00. Asmus Decl. ¶ 8. New York's no-fault insurance law, N.Y. Ins. L. §§ 5101-5109, does not leave GEICO much time to investigate these claims before reimbursement is required; under the law, insurers are required to pay or deny the claim within 30 days after receiving "proof of claim." N.Y. Ins. L. § 5106(a). As a result, GEICO has already *paid out* more than $230,000 to the defendants, which it now seeks to recover. Vanunu Decl. ¶ 9.

And the defendants have made aggressive efforts to collect on the claims that GEICO has not yet paid. Ms. Asmus, GEICO's claims manager, declares that the defendants "are currently prosecuting 160 civil court" collection suits against GEICO, seeking to collect more than $267,000. Asmus Decl. ¶ 10. She also declares that VVX has submitted 149 additional bills, totaling more than $171,000, that are not yet the subject of litigation or arbitration (but could be in the near future, absent injunctive relief). *Id.* ¶¶ 11-12. It is these actions — pending and potential — that GEICO seeks to stay and prevent in its application for equitable relief.

Defendants do not dispute any of GEICO's evidence. Despite having requested and received two extensions of the briefing schedule, Defendants submitted only one document in opposition to GEICO's motion for a stay: an affidavit from defense counsel Lloyd Eisenberg. *See* Decl. of Lloyd Eisenberg in Resp. to Pl. Mot. to Stay and Enjoin ("Eisenberg Decl.") ¶¶ 5-6, ECF No. 58-14. That affidavit does not dispute GEICO's factual assertions. Instead, Eisenberg avers that Defendants offered to have their "claims for payment resolved in a single forum" — namely, this Court. *Id*. ¶¶ 5-6. Eisenberg labels the Plaintiffs' request for injunctive relief "disingenuous" because Plaintiffs declined that offer. *Id*.

## II.  GEICO'S Application to Stay Pending State Cases

In support of its request to stay 160 pending state-court cases in a single order, GEICO invokes Fed. R. Civ. P. 65, the Court's inherent power, and the All Writs Act. Notice of Mot. to Stay and Enjoin 1, ECF No. 58; Pl. Mem. in Supp. of Mot. ("Pl. Mem.") 25, ECF No. 58-1. The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The statute codifies certain inherent powers "traditionally exercisable by courts in equity." *State Farm Mut. Auto. Ins. Co. v. Parisien*,

352 F. Supp. 3d 215, 224 (E.D.N.Y. 2018).  These include, among
other things, a federal court's power to "enjoin actions in
other jurisdictions that would undermine" the court's "ability
to reach and resolve the merits of the federal suit before it."
*Id.*[3]

     This power must be measured against the limitations in
another federal statute, the Anti-Injunction Act ("AIA"), which
restricts federal courts' authority to enjoin pending state
court proceedings.  Since it was last amended in 1948, that law
has provided:

> A court of the United States may not grant an
> injunction to stay proceedings in a State court except
> as expressly authorized by Act of Congress, or where
> necessary in aid of its jurisdiction, or to protect or
> effectuate its judgments.

28 U.S.C. § 2283.  GEICO argues that this case falls within two
of the listed exceptions: that the stay is "necessary in aid of"
my jurisdiction, and that it will serve "to protect or
effectuate" the judgment in this case.[4]  Pl. Mem. 22.

---

[3] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits citations and internal quotation marks.

[4] GEICO's brief focuses almost exclusively on the aid-of-jurisdiction
exception, but also mentions the protect-or-effectuate exception in passing.
Pl. Mem. 22-24.  The exception for protecting or effectuating judgment
applies after a federal court has issued a judgment.  *See, e.g.*, *Wyly v.
Weiss*, 697 F.3d 131, 139 (2d Cir. 2012) (exception applies when a party
pursues in state court "a claim or issue that previously was presented to *and
decided by* the federal court") (emphasis added); *see also Chick Kam Choo v.
Exxon Corp.*, 486 U.S. 140, 140 (1998) (a prerequisite for applying the
relitigation exception is that the issues "actually have been decided by the
federal court").  That is not, of course, the case here.

There is no direct authority in Supreme Court or Second Circuit cases that would support the application of these exceptions here. But a growing string of courts in this district have entered injunctions staying state court cases in factual circumstances largely indistinguishable from the instant case. *See GEICO v. Tolmasov*, 2022 WL 1438602, at \*8 (E.D.N.Y. May 3, 2022); *GEICO v. Landow*, 2022 WL 939717, at \*13 (E.D.N.Y. Mar. 29, 2022); *GEICO v. Wallegood, Inc.*, No. 21-CV-1986, ECF No. 36 (E.D.N.Y. July 16, 2021); *Parisien*, 352 F. Supp. 3d at 224-28; *but see State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, No. 21-CV-5523, 2022 WL 1606523, at \*8-\*13 (E.D.N.Y. May 20, 2022) (declining to enjoin pending state cases against State Farm in similar factual and procedural posture). In granting such relief, those cases rely on the "in aid of jurisdiction" exception to the AIA. *See, e.g.*, *Parisien*, 352 F. Supp. 3d at 224; *Landow*, 2022 WL 939717, at \*13. These cases are comprehensively reasoned (especially *Parisien*, which began the line); but I read the applicable Supreme Court and Second Circuit precedent to place the relief they grant outside the scope of the AIA's exceptions.

The Supreme Court has observed that the Anti-Injunction Act "in part rests on the fundamental constitutional independence of the States and their courts." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 287 (1970).

Accordingly, the Court has counseled caution in identifying new applications of the exceptions.  *Id.* at 297 ("Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."); *id.* at 287 (instructing that "the [AIA's] exceptions should not be enlarged by loose statutory construction").

Applying a prior version of the AIA a hundred years ago, the Supreme Court limited the necessary-in-aid-of-jurisdiction exception to *in rem*, rather than *in personam*, actions.  *Kline v. Burke Constr. Co.*, 260 U.S. 226 (1922).  The Court reasoned that the effect of filing an *in rem* action in federal court "is to draw to the federal court the possession or control, actual or potential, of the *res*," and a state court's exercise of jurisdiction "necessarily impairs, and may defeat" the federal court's jurisdiction.  *Id.* at 229; *see also Wyly v. Weiss*, 697 F.3d 131, 137-38 (2d Cir. 2012).  But since *Kline*, the Supreme Court "has never held that a district court may enjoin, as necessary in aid of the district court's jurisdiction, a parallel *in personam* state action."  *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 426 (2d Cir. 2004) (citing *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977) (plurality opinion) ("We have never viewed parallel *in*

*personam* actions as interfering with the jurisdiction of either court . . . .")).

The Second Circuit appears to have applied the necessary-in-aid-of-jurisdicton exception to an *in personam* case in only one instance.  In *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985), the Court of Appeals upheld a district court injunction against an action brought by the State of New York in state court.  At the time, the federal district court was presiding over a "consolidated, multi-district, class action" brought by a class of annuity holders against twenty-six broker dealers who had sold the annuities.  *See id.* at 331 (district court was presiding over "the consolidated proceedings of more than 100 federal securities lawsuits").  By the time the district judge issued the injunction, he had been presiding over the action for years; eighteen of the broker-dealer defendants had signed stipulations of settlement with the plaintiff class; and the court had given preliminary approval to that settlement and scheduled a fairness hearing.  *Id*. at 332.  In affirming the district court's injunction, the Court of Appeals concluded that the class action proceeding was "so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control."  *Id*. at 337.

But the Second Circuit has since taken pains to clarify that *Baldwin-United* "did not create a blanket rule or

presumption that a federal court in any multidistrict action may enjoin parallel state proceedings." *Ret. Sys. of Ala.*, 386 F.3d at 427. *Baldwin-United's* facts were *sui generis*: the multidistrict litigation there was truly of "extraordinary complexity." *United States v. Schurkman*, 728 F.3d 129, 137-38 (2d Cir. 2013). And it was "crucial to [the Second Circuit's] analysis that most of the defendants had already settled, and that there was a substantially significant prospect that the other eight defendants [would] settle in the reasonably near future." *Ret. Sys. of Ala.*, 386 F.3d at 428.

Those crucial factors are not present here, and the factors that GEICO invokes now are simply not sufficiently analogous (in my view) to merit application of the necessary-in-aid-of-jurisdiction exception. Unlike the district court in *Baldwin-United*, I have not presided over this case for years. This is not a multidistrict litigation; there is no plaintiff class; and (most critically) the parties and the Court have not expended substantial resources crafting a large number of individual settlements that would be blown up by the state cases that GEICO seeks to stay. Accordingly, Plaintiff cannot overcome the AIA's limitations. *See Metro Pain Specialists P.C.,* 2022 WL 1606523, at *8-*13; *see also, e.g.*, *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 125, 132 (S.D.N.Y. 2011) (holding that it "would be neither lawful nor appropriate"

to enjoin pending state cases where, unlike in *Baldwin-United*, the court had not yet certified a class and there were more than a dozen defendants not a party to a settlement); *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238, 2005 WL 2100930, at *4 (E.D.N.Y. Aug. 31, 2005) (declining to enjoin state case because although the federal action was "no doubt a large, complex federal class action," it was not "on the verge of settling" at the time); *Oneida Indian Nation of N.Y. State v. Cnty. of Oneida, N.Y.*, 132 F. Supp. 2d 71, 75 (N.D.N.Y. 2000) (distinguishing *Baldwin-United* and declining to enjoin a state court action because "settlement negotiations in this case have ceased, and there is no foreseeable hope that this land claim litigation will be resolved through such a process").

GEICO reasons that it faces an impossible predicament. It says it will be unable, for one, to present the "full contours" of Defendants' fraud in any one state case.  Pl. Mem. 24.  And, GEICO argues, any judgment issued in the state no-fault proceedings will be *res judicata* — in effect, that if it loses a single collection action in state court, I will be precluded from granting the declaratory judgment they seek here. *Id.* at 23-24.  GEICO further argues that it will effectively be deprived of "a fair opportunity to present its fraud claims" in state court "as there is no practical method where the [state] Civil Court could hear all of the claims at issue."  *Id.* at 24.

Accordingly, GEICO contends, to deny the stay would be to deny GEICO its day in court.

It is far from clear, however, that the state courts will be at such a loss to contend with this alleged scheme.  For starters, there is no obvious reason why a state court will be unable to "fully consider the full contours of a fraudulent scheme involving patterns of fraudulent behavior" that are "not readily apparent from the face of any individual bill or treatment record."  Pl. Mem. 24.  New York state courts, like federal courts, allow the admission of other-bad-acts evidence when necessary to establish motive, intent, the absence of mistake or accident, or *a common scheme or plan*, or among other things.  *See Matter of Brandon's Est.*, 55 N.Y.2d 206, 210-11 (1982) (explaining that other-acts evidence is admissible to establish intent and has "often been applied in cases where fraud is alleged"); *Dlugosz v. New York Cent. Mut. Fire Ins. Co.*, 518 N.Y.S.2d 237, 238 (App. Div. 1987) (affirming trial court's decision, in homeowner's insurance dispute, to admit evidence of past filed claims in support of insurer's affirmative defense of fraud).

Plaintiffs' *res judicata* argument, too, is overblown. It is true that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Monahan v.*

*New York City Dept. of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000).  Whether the prior judgment has preclusive effect, in turn, "depends in part on whether the same transaction [or] series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Id*. at 285.  But the existence of one valid claim for payment from GEICO would not automatically impact all — or even any — other claims under the doctrine of *res judicata*.  Even on Plaintiff's recitation of the facts, the defendants' scheme did not function identically from claim to claim.  *See, e.g.*, Compl. ¶ 51 (clinic representatives "*often* supplied . . . prescriptions that were never actually signed" by the relevant doctors); ¶ 52 ("In *many cases*, the products purportedly dispensed . . . were inexpensive . . . .") (emphases added).  On these facts, it strains credulity to assert that one state plaintiff's victory would seal GEICO's fate across the board.[5]

    In addition, GEICO has not eliminated the possibility that it has other avenues to success in the state courts.

---

[5] Moreover, if GEICO is correct that losing a single state case would preclude the declaratory relief they seek here, that could turn out to be well and good (at least in theory).  For example, it may be that defendants' victories in one or more state cases reveal the overbreadth of the declaration that "VVX has no right to receive payment on *any pending bills* submitted to GEICO."  Compl. ¶ 154 (emphasis added).  In that circumstance, it would be entirely proper if the state cases erode "this Court's authority to issue a declaratory judgment and . . . award complete relief as to GEICO's claims in this action."  Pl. Mem. 24-25.

Depending on the factual overlap, GEICO could seek to consolidate two or more of the pending cases under C.P.L.R. § 602(a).  It may be that consolidation is generally "highly disfavored" in New York no-fault cases, *see Parisien*, 352 F. Supp. 3d at 229 (citing *Urban Radiology, P.C. v. GEICO Ins. Co.,* 2010 WL 3463018, at *1 (N.Y. Civ. Ct. Kings Cnty. Aug. 23, 2010)).  But GEICO argues that *this particular series* of New York cases is truly extraordinary, and if that is so, then even a generally disfavored remedy may be appropriate.  Indeed, Defendants have claimed that they "welcome the opportunity" to have all the disputed claims resolved in a single court (albeit a federal court).  Eisenberg Decl. ¶¶ 4–6.  At a minimum, GEICO should explain why consolidation is impractical, but it has not done so persuasively in this case.

There are other potential rejoinders to GEICO's argument that it is helpless to stem the tide in state court. If it is true that all 160 state cases involve the attempt to collect on fraudulent claims, then the New York courts will be able to contemplate sanctions against the parties (and, perhaps, attorneys) bringing them.  *See* 22 N.Y.C.R.R. § 130-1.1.  Indeed, that is the very purpose of sanctions under Section 130-1.1: to discourage frivolous (let alone fraudulent) litigation.  *See e.g., Gordon v. Marrone*, 616 N.Y.S.2d 98, 100 (App. Div. 1994) (observing that sanctions were necessary because "[f]rivolous

claims and abusive litigation practices were causing unjustifiable burdens on an already overcrowded court system").

At bottom, the necessary-in-aid-of-jurisdiction exception applies (by definition) when necessary to protect *the Court's* jurisdiction — not when it is desirable, or even necessary, to protect a private party's litigation position. Given the Supreme Court's clear directive (and the Second Circuit's guidance) that new applications of the necessary-in-aid-of-jurisdiction exception are to be made sparingly, I decline to apply the exception here.

### III. GEICO's Application to Enjoin Prospective State Collection Suits and Arbitrations

GEICO also moves to enjoin *future* collection actions and arbitration proceedings that the defendants might file while this case is pending.  The federal-state comity considerations discussed above are not applicable to Plaintiffs' motion to enjoin future efforts at collection.  The Anti-Injunction Act "does not prevent a federal court from restraining a party from instituting future state proceedings."  *Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003); *see also GEICO v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 496-97 (E.D.N.Y. 2021) (granting prospective injunction on similar factual showing).

Federal courts in this Circuit have issued a steady stream of prospective injunctions against state-court cases and

arbitrations under this standard.  *See, e.g., GEICO v. Beynin,* No. 19-CV-06118, 2021 WL 1146051, at *10 (E.D.N.Y. Mar. 25, 2021) (enjoining defendants from commencing arbitration proceedings involving same types of insurance claims at issue here); *GEICO v. Wellmart RX, Inc.,* 435 F. Supp. 3d 443, 456 (E.D.N.Y. 2020) (enjoining prospective arbitrations and state court actions); *Landow,* 2022 WL 939717, at *14 (same); *Wallegood,* No. 21-CV-1986, at 21 (same); *GEICO v. Big Apple Med Equipment, Inc.,* No. 20-CV-5786, ECF No. 52 at 22 (E.D.N.Y. Mar. 25, 2021) (same); *Relief Med., P.C.,* 554 F. Supp. 3d at 506 (same); *Parisien,* 352 F. Supp. 3d at 235 (same).

The Second Circuit has, like other circuits, framed alternative tests for a preliminary injunction.  Under the traditional test, a party seeking a preliminary injunction must demonstrate (1) "a likelihood of success on the merits"; (2) "a likelihood of irreparable injury in the absence of an injunction"; (3) "that the balance of hardships tips in the plaintiff's favor"; and (4) "that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015). The alternative test, referred to as the "serious questions standard," requires a lesser showing on the merits — only that there exists "sufficiently serious questions going to the merits to make them a fair ground for litigation" — but a higher

18

showing as to the balance of hardships.  *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).  That balance must tip "decidedly" toward the party requesting the preliminary relief.  *Id*.  The alternatives allow courts "flexibility in the face of varying factual scenarios and the greater uncertainties inherent at the outset of particularly complex litigation."  *Id*.  Whichever test is applied, Plaintiffs must establish the elements by a preponderance of the evidence.  *AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010).[6]

For the reasons set out below, I conclude that GEICO has demonstrated (1) that it will suffer irreparable harm absent injunctive relief, (2) the existence of a "serious question" going to the merits, (3) that the balance of hardships tips decidedly in its favor and (4) that the injunction is in the public interest.

A.   **Irreparable Harm**

Irreparable harm is "a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation."  *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002).  A number of

---

[6] Though Defendants do not make this argument, the Court also notes the Federal Arbitration Act is no bar to the Court enjoining Defendants' from initiating no-fault arbitration proceedings.  *See Beynin*, 2021 WL 1146051, at *8-*9 (collecting cases).

judges in this district have concluded that a large number of
potentially fraudulent collection suits faced by a plaintiff in
this context would cause a plaintiff irreparable harm absent
temporary relief.  *See, e.g., Landow,* 2022 WL 939717, at *5;
*Wallegood*, No. 21-CV-1986 at 9-10; *Big Apple Med Equipment*,
No. 20-CV-5786 at 9-10.

As of January 25, 2022, Defendants had submitted 149
claims that remained unpaid and were not yet the subject of
litigation or arbitration.  Asmus Decl. ¶¶ 10-11.  GEICO has
shown by a preponderance that it would suffer irreparable harm
if Defendants were allowed to bring additional suits during the
pendency of this case because the outcome of those actions could
be inconsistent with one another and, perhaps, the ruling in
this case.  *See, e.g., Landow,* 2022 WL 939717, at *12;
*Wallegood*, No. 21-CV-1986 at 9-10.  The court put it well in
*Allstate Ins. Co. v. Elzanaty*, describing the:

> concern here with wasting time and resources in an
> arbitration with awards that might eventually be, at
> best, inconsistent with this Court's ruling, and at
> worst, essentially ineffective.  The Court need not
> address now the precise effect of an inconsistent
> declaratory judgment from this Court on certain
> arbitration awards.  It is sufficient to recognize the
> large realm of potential problems this may cause on
> the validity of those awards, especially in light of
> their multitude and internal inconsistency with each
> other.  Thus, the Court agrees that allowing a large
> number of proceedings to be heard by a mix of
> arbitrators, each of whom will likely come to their
> own independent and potentially contradictory

> conclusions, will result in harm to Allstate from
> which it cannot recover.

929 F. Supp. 2d 199, 222 (E.D.N.Y. 2013).  This constitutes

irreparable harm for purposes of Rule 65 even if it is not

sufficient to overcome the limitations of the Anti-Injunction

Act, as discussed above.  *See Wellmart RX, Inc.*, 435 F. Supp. 3d

at 449-50 (noting that courts in the Second Circuit have

"reiterated time and again" that this type of harm is

irreparable, and collecting cases).

This risk of inconsistent judgments is in addition to

the expenditure of time, effort and money that will be required

on GEICO's part absent relief.  The morass of litigation that

the company faces would hijack the resources of even a large

entity's legal department.  Adequately addressing these suits

will require a massive effort at coordination.  It is hard

enough to fight a two-front war; a 149-front one is another

story entirely.  This harm would not be cured by money damages.

Important, too, is that VVX has few assets that GEICO

could reach if it is ultimately successful.  GEICO's evidence

suggests that VVX is not currently in operation.  Its

investigator, John Cataldi, visited VVX's business address in

Brooklyn in January 2022.  Declaration of John Cataldi, ¶¶ 5-7,

ECF No. 58-12.  He saw no signs of VVX's presence, and an

individual who emerged from the commercial space said that he

worked for a transportation business. *Id.* ¶¶ 7-8. Nor, according to GEICO's assert search, does VVX have any personal or real property. Asmus Decl. ¶ 13. GEICO alleges, further, that VVX's most significant assets are its accounts receivable, which are themselves the subject of state collection actions, arbitration proceedings and the instant action. *See id.* ¶¶ 9, 13; Pl. Mem. 14. If GEICO is right that VVX's receivables are predicated on fraudulent claims, then those assets will be worthless.

"The unlikelihood that defendants . . . would, in any event, be able to satisfy a sustain damage award further supports a finding of irreparable harm." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 286 (2d Cir. 2012); *see also Landow*, 2022 WL 939717, at *12; *Wallegood*, No. 21-CV-1986 at 10. And taken together, the combined risks of inconsistent judgments, the complexity of dealing with a continuing avalanche of suits, and VVX's likely inability to pay damages easily satisfy the irreparable harm requirement.

## B.   Serious Question Going to the Merits

"The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not

granting the injunction." *Citigroup Glob. Markets, Inc.,* 598 F.3d at 35.  "District courts in the Second Circuit have generally found that likelihood of success is not the focus at the early stages of a case involving an alleged scheme to defraud an insurer of assigned no-fault benefits because any likelihood of success inquiry would be premature." *Relief Med., P.C.,* 554 F. Supp. 3d at 498 (citing cases).  The serious-questions standard is appropriate here for these reasons.[7]

GEICO seeks a declaration that "VVX has no right to receive payment on any pending bills" submitted to GEICO because the bills are the product of fraud and misrepresentation. *See* Compl. ¶¶ 153-54 (setting out the declaratory relief GEICO seeks).  The Declaratory Judgment Act authorizes a federal court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a). Declaratory judgment actions are ripe for adjudication when "there is a substantial controversy, between parties having

---

[7] Indeed, GEICO has established a strong likelihood that it will be able to prove the various defendants' participation in a massive scheme to defraud, based on the facts discussed above and below. *See generally* Compl. ¶¶ 155-161 and 168-176 (asserting fraud claims in Counts Two and Four).  The "serious question" standard is more appropriate than the "likelihood of success on the merits" standard, however, because of the complexities associated with the Plaintiffs' sweeping requests for declaratory relief. *See, e.g.,* Compl. ¶ 154(i) (requesting a declaration that "VVX has no right to receive payment on any pending bills submitted to GEICO because it knowingly made false and fraudulent misrepresentations to GEICO . . .").

adverse legal interests, of sufficient immediacy, and reality to warrant the issuance of a declaratory judgment." *Duane Reade, Inc.* v. *St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005).  In deciding "whether to entertain an action for declaratory judgment, [the Second Circuit has] instructed district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Id.* at 389. GEICO's request for declaratory relief will meet that mark because whether Defendants are entitled to payment under New York's insurance law is a substantial controversy between the parties — one that this Court can resolve by testing GEICO's substantial evidence of fraud at trial.

And GEICO has adduced sufficient evidence at this point to establish at least a serious question going to the merits of that claim.  The evidence adduced so far tends overwhelmingly to demonstrate that (1) the DME billed to GEICO was not medically necessary and that (2) Defendants fraudulently billed GEICO for durable medical equipment they never provided to beneficiaries (they instead provided cheaper items and pocketed the difference).  New York provides a defense to insurers in collection proceedings if they can show that the items provided were not medically necessary.  *See Long Island*

*Radiology v. Allstate Ins. Co.*, 830 N.Y.S.2d 192, 194 (App. Div. 2007) (discussing the "defense of lack of medical necessity"). New York's no-fault insurance law provides for reimbursements of "all *necessary* expenses." *Id.* The insurer has the burden of proving lack of medical necessity, and may do so by "presenting proof in evidentiary form establishing a factual basis and medical rationale for concluding the treatment and testing was not medically necessary." *Boulevard Multispec Med., P.C. v. Tri-State Consumer Ins. Co.*, 982 N.Y.S.2d 864, 866 (Dist. Ct. 2014); *see also Sunshine Imaging Ass'n/WNY MRI v. Gov't Emp. Ins. Co.*, 885 N.Y.S.2d, 557, 558-59 (App. Div. 2009) (observing that "defendant raised a triable issue of fact by submitting its denial of claim forms setting forth that the services for which plaintiff sought to recover no-fault benefit were not medically necessary").

On a related note, New York state also allows insurers to demonstrate fraud as a basis for denying payment. *E.g.*, *Parisien*, 352 F. Supp. 3d at 221-22; *see also Presbyterian Hosp. in the City of New York v. Maryland Cas. Co.*, 90 N.Y.2d 274, 285 (1997) (explaining that New York's "no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims"). This defense has five elements: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4)

reasonable reliance on the part of the plaintiff; and (5) resulting damages to the plaintiff." *Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006).

GEICO has produced evidence that raises serious questions going to the merits of these questions (which in turn underpin its request for declaratory relief). Among other things, GEICO has submitted the affidavits from Drs. Gang and Hua attesting that prescriptions issued in their names were forged. *See* Gang Aff. ¶¶ 9-12; Hua Aff. ¶¶ 9-12. Dr. Gang goes on to declare, for instance, that "the DME was prescribed without my knowledge or consent, and without me first determining whether such DME was medically necessary." Gang Aff. ¶ 10.

Dr. Hua speaks of similar conduct. He, too, reviewed a sample set of claims submitted to GEICO that included prescriptions bearing his signature. Hua Aff. ¶¶ 9-10. He "noticed that [his] signature was photocopied and used to prescribe DME without [his] knowledge or consent" and also that some prescriptions bore dates on which he was not present at his medical office. *Id.* Both Gang and Hua declare that, despite defendant Klikshteyn's deposition testimony that he spoke with them and that they approved DME items he showed them, they "do not know" him and have "never had a conversation with Klikshteyn about DME or anything else." Hua Aff. ¶ 21; Gang Aff. ¶ 14.

In addition, GEICO provides the expert report and declaration of Dr. James Dillard. He reviewed, among other things, bills from VVX to GEICO, the prescriptions underlying those bills, copies of treatment and billing records, and photographs of DME produced for inspection by VVX. *See* Dillard Decl. ¶ 4. Dr. Dillard explains that these files cannot demonstrate medical necessity, as "virtually all of the patients" were given "extremely similar treatment plans regardless of their individual complaints, symptoms, or presentations." *Id.* ¶ 9. These patients were provided "nearly identical prescriptions." *Id.* Dr. Dillard describes this pattern with particularity as to each doctor. *See id.* ¶ 15. By way of example, defendant Dr. Granovsky "virtually always issued a prescription" for an orthopedic pillow, back cushion, cervical collar, EMS Unit, and lumbosacral support after "an initial examination." *Id.* Dr. Dillard concludes, and his analysis demonstrates persuasively, that the DME that Defendants provided was not medically necessary.

GEICO also identifies a serious question going to the merits in its claim that Defendants deliberately misrepresented the items provided to beneficiaries. To that end, GEICO points to the report and declaration of certified orthotist Bradley Smith, who compares the billing codes that Defendants used to the items actually delivered. *See* Smith Decl. ¶ 7. Smith's

comparison shows that Defendants billed GEICO using codes for substantially more expensive items than those actually provided. *See id*. ¶¶ 15-23.  For example, VVX billed GEICO using a billing code for a back cushion at the cost of $382.02, when it actually provided a cushion that, in Smith's view, should have been reimbursable under a different code at a maximum rate of $22.04. *Id.* ¶ 18.

Klikshteyn's deposition testimony further supports GEICO's position.  Klikshteyn acknowledged that, in certain circumstances, he selected the DME to supply in response to the vague prescriptions at issue.  Klikshteyn Dep. 99:13-100:05.  He also acknowledged that he is not certified by the American Board of Certification in Orthotics and Prosthetics or the Board for Orthotist and Prosthetist Certification. *See id*. 25:10-25 (Klikshteyn explaining that he has no certification or training in orthotics and prosthetics other than a single certification from a DME manufacturer instructing him on how to use their equipment).[8]  In response to repeated inquiries about why he chose the specific equipment he did, Klikshteyn could say only that he thought it was the "best" product for the patient.

---

[8] GEICO's orthotist explains that VVX should only have used billing codes for custom-fit DME if such fitting and modification were "performed by a practitioner with expertise, which by definition, is a practitioner certified by the" boards that Klikshteyn admitted had not certified him. Smith Decl. ¶ 21-22.

Klikshteyn Dep. 91:23-92:9, 97:14-19, 99:13-100:05; *see also* Smith Decl. ¶¶ 10-13.

This evidence supports GEICO's defense of lack of medical necessity.  For example, whenever VVX received prescriptions for "lumbar-sacral support," Klikshteyn provided one specific type of lumbar-sacral support.  Smith Decl. ¶ 12. But on Smith's expert review, the vague prescriptions at issue could apply to eighteen different types of DME, with each one having their own billing code and reimbursement rate.  *Id*.  As noted, Defendants do not dispute any of these specific factual contentions.

At bottom, the contrast between the evidence produced by GEICO and Defendants' lack of evidence resolves the inquiry at this stage.  GEICO has raised serious questions going to the merits of its claim for declaratory judgment.  *See, e.g., Landow*, 2022 WL 939717, at *12; *Wallegood*, No. 21-CV-1986 at 11-13; *Big Apple Med Equipment, Inc.*, No. 20-CV-5786 at 14-17; *Beynin,* 2021 WL 1146051, at *6-*7; *Parisien*, 352 F. Supp. 3d at 234.

## C.   Balance of Hardships

The balance of hardships tips decidedly in GEICO's favor.  Were new actions and arbitration proceedings not enjoined, Plaintiffs would, for the reasons stated above, suffer irreparable harm.  *See also Parisien*, 352 F. Supp. 3d at 234

(explaining that in these types of cases, "the irreparable harm factors . . . tip the equities squarely" in Plaintiffs' favor); *Landow,* 2022 WL 939717, at *12 (same).  From Defendants' perspective, the only harm the Court can anticipate (since Defendants do not raise any hardships in their papers) is the risk of delay during these proceedings.  *See Beynin*, 2021 WL 1146051, at *8 (concluding that, if stay was granted, a defendant's hardship was only that recovery would "at worst, be delayed").  This delay is limited by the fact that a trial in this case is currently scheduled for February 13, 2023.  Docket Order of February 11, 2022.  In any event, both parties may benefit from future disputes being subjected to declaratory relief.  *See, e.g.*, *Wallegood*, No. 21-CV-1986 at 14 (explaining that "granting the stay and injunction will actually save all parties time and resources").[9]

---

[9] The Court does not take lightly the decision to prohibit Defendants' access to the forum of their choosing, at least for the duration of the preliminary injunction.  In the context of permanent filing injunctions (as opposed to the preliminary relief granted here), courts must consider the litigant's "history of litigation" and "motive" as well as whether the litigant is "represented by counsel," "has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel," and "whether other sanctions would be adequate." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019).  Under any standard, however, this relief is appropriate here, given GEICO's compelling showing that it is currently the target of a massive and concerted fraud scheme.

D.    **Public Interest**

        Finally, the Court must consider the public interest.
Here, the public interest in an injunction against the filing of
additional collection actions is clear.  The public has an
interest in the efficient use of limited judicial resources.
The public interest is, of course, disserved by the court system
(state or federal) being deluged by a massive, broadly
distributed set of potentially fraudulent allegations, which for
obvious reasons would slow the pace of other cases.  Granting
injunctive relief will stop Defendants from filing further
collection actions and arbitration proceedings that may be
resolved through this Court's adjudication of the declaratory
judgment claim.  More broadly, an efficient resolution of
serious healthcare fraud claims is in the public interest too.
*See Relief Med., P.C.*, 554 F. Supp. 3d at 504-05 (concluding
that "there [wa]s no indication of public harm as a result of a
stay" granted in similar circumstances).

E.    **Security**

        Plaintiffs also ask the Court to use its discretion to
waive the security requirement of Fed. R. Civ. P. 65(c).  Rule
65(c) provides that "the court may issue a preliminary
injunction or a temporary restraining order only if the movant
gives security in an amount that the court considers proper to
pay the costs and damages sustained by any party found to have

been wrongfully enjoined or restrained."  Courts in this

district have repeatedly concluded that claims of fraud

pertaining to New York's no-fault insurance laws, and fraud

against the healthcare system generally, implicate the

"enforcement of public interests," an exception to Rule 65(c)'s

requirement of security.  *See Wallegood*, No. 21-CV-01986, at 19-

20; *Landow*, 2022 WL 949717, at *14.  Defendants have not

demonstrated that they will be prejudiced by the entry of a

preliminary injunction such that security is necessary.  The

Court therefore waives Rule 65(c)'s security requirement.

### IV. Conclusion

For the reasons stated above, GEICO's motion is

granted in part and denied in part.  GEICO's request to stay

pending state civil court proceedings against GEICO by VVX is

denied.  GEICO's request to enjoin Defendants prospectively is

granted: VVX, Klikshteyn and anyone acting on their behalf are

enjoined from filing any new collection actions against GEICO

seeking no-fault insurance benefits, whether in state court or

in arbitration proceedings before the American Arbitration

Association, pending resolution of this declaratory judgment

action, absent further order of this Court.  Plaintiffs'

obligation to post security is waived.


      SO ORDERED.

                                    /s/ Eric Komitee

                                    ERIC KOMITEE
                                    United States District Judge


Dated:    June 02, 2022
           Brooklyn, New York